IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICH AUREL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DLB-21-1422 |
| DEPARTMENT OF PUBLIC SAFETY DEPUTY SECRETARY OPERATIONS, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| ********* | | |
| MICH AUREL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DLB-21-2182 |
| CORIZON, Inc., *et al.*, | * | |
| Defendants. | * | |
| ********* | | |

**MEMORANDUM OPINION**

On June 7, 2021, plaintiff Mich Aurel, who is incarcerated at Western Correctional Institution ("WCI") and proceeding without counsel, filed a civil rights complaint. ECF 1 in *Aurel v. Department of Public Safety Deputy Secretary Operations, et al.*, DLB-21-1422. On August 25, 2021, Aurel filed a second civil rights complaint along with a motion for an emergency restraining order. ECF 1 & 3 in *Aurel v. Corizon, Inc., et al.*, DLB-21-2182. As discussed below, the two cases will be consolidated, Aurel's motion for an emergency restraining order will be denied, and the consolidated case will be dismissed without prejudice.

I.    The Complaints

    A.    *Aurel v. Department of Public Safety Deputy Secretary Operations*, et al., DLB-21-1422

Aurel filed two complaints on June 7, 2021, one of which was filed as the main complaint and the second of which was filed as a supplement to the complaint. ECF 1, 3. In the main complaint, he alleges that Janette Clark, Nurse Practitioner, who was employed by the prison's medical provider Corizon, Inc., sexually assaulted him on March 15, 2021. ECF 1, at 2–3. He states he is afraid of Janette Clark and all other WCI Corizon staff and officers. *Id.* at 3. He states he reported the sexual abuse and was moved to administrative segregation on March 15, 2021. *Id.* He claims that from March 15, 2021 to May 9, 2021, he was denied sick calls, his outgoing mail was destroyed, and he was denied access to t-shirts and state clothing. *Id.* at 3–4. Aurel also alleges that all Corizon staff, dietary staff, and officers gave him "poison." *Id.* at 4. Aurel believes he is being retaliated against for reporting the alleged sexual assault. *Id.* at 9. He asks for an "emergency transfer" and monetary damages. *Id.* at 4, 9.

In the supplement, Aurel repeats the allegations contained in the main complaint. ECF 3. He names three Corizon employees who allegedly poisoned him. He does not state how they poisoned him. *Id.* at 3. He further states generally that he has been denied access to medical care, including ophthalmology services, eyeglasses, orthopedic shoes, a medical mattress, and his medical records. *Id.*

    B.    *Aurel v. Corizon, Inc., et al.*, DLB-21-2182

On August 25, 2021, the Court received an additional complaint from Aurel and docketed it as a new case. ECF 1. Aurel repeats the allegations pertaining to the March 15, 2021 sexual assault. *Id.* He states he was moved to administrative segregation in March 2021 and continued to be housed there until June 2021. *Id.* at 4–5. He states that on July 6, 2021, Correctional Officer

II R. Conner threatened to put him in a cell, "spray [him with] chemical mace," place "a spit-blocking mask on [his] face," and "choke [him] to death." *Id.* at 5. He states that WCI Officers, Corizon staff, and "Case Management" are harassing him and discriminating and retaliating against him. *Id.*[1]

On August 25, 2021, the Court received a "Motion for Emergency Restraining Order" from Aurel. ECF 3. The motion lists 50 individuals who appear to be correctional officers, health care staff, and case managers. *Id.* at 2–3. Aurel states that he is in "imminent danger of serious physical injury" and fears for his life "based solely on verbal threats of harm made by the officer's [sic] at WCI." *Id.* at 1. He requests that all named officers be required to "remain 500 yards away" from him at "all time 24/7" or that he be transferred to a new facility. *Id.* at 1.

In the motion, Aurel also complains generally about insufficient medical care, including denial of sick calls on dates ranging from October 6, 2020 to July 26, 2021. *Id.* at 5, 6. He further alleges that on October 9, 2020, he was verbally threatened and his back brace was confiscated, and on November 1, 2020, he was assaulted in his cell. *Id.* at 4. Aurel also repeats his allegations regarding the March 15, 2021 incident and threats of physical harm by WCI Officers. *Id.* at 4, 6.

II.     Consolidation

Federal Rule Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." In the complaints filed in these two cases, Aurel brings overlapping allegations of

---

[1] Plaintiff states that he has listed the names of the individuals whom he alleges are harassing him and discriminating and retaliating against him, but his complaint does not include such a list. ECF 1, at 5. Plaintiff did, however, include a list of individuals in his motion for emergency restraining order. ECF 3, at 2–3. As best the Court can discern, plaintiff refers to that list in his complaint.

a March 15, 2021 sexual assault, verbal threats of harm by WCI officers, and denials of medical care. Given the similarity of the allegations and in the interests of judicial economy, the two cases shall be consolidated for all purposes.

III.     Motion to Proceed In Forma Pauperis

Aurel has filed a motion to proceed *in forma pauperis* in each case. ECF 2 in DLB-21-1422; ECF 2 in DLB-21-2182.

Aurel has filed over 50 actions in this Court over the past nine years. Three of the cases in which Aurel was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) were dismissed as frivolous or for failure to state a claim. Aurel has been notified repeatedly that the dismissals constituted "strikes" under 28 U.S.C. § 1915(g), a statute that Congress enacted "to reduce the number of frivolous lawsuits flooding the federal courts." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013), *as amended* (Oct. 22, 2013). Additionally, he has been warned that pursuant to § 1915(g), when a prisoner has three "strikes," he cannot file a lawsuit without prepaying the filing fee unless he "is under imminent danger of serious physical injury."[2]

Aurel may only proceed in this action without prepayment of the filing fee if he is under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). "To satisfy the imminent danger criterion, a prisoner must show that the danger 'exist[ed] at the time the complaint or the appeal [wa]s filed,'" as opposed to "'when the alleged wrongdoing occurred.'" *Newkirk v. Kiser*, 812 F. App'x 159 (4th Cir. 2020) (quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003)), *cert. denied*, 141 S. Ct. 1087 (2021). Thus, the focus is on whether the alleged conduct "threatens

---

[2] *See, e.g.*, *Mich v. Nice*, No. JKB-14-1397; *Aurel v. Gainer*, No. ELH-15-1750; *Aurel v. Jones*, ELH-15-1928; *Aurel v. NBCI*, No. ELH-16-0850; *Aurel v. NBCI*, No. ELH-16-0851; *Aurel v. Vanskiver*, No. ELH-19-2756; *Aurel v. Kammauf*, No. ELH-20-0511; *Aurel v. Hoover*, No. ELH-20-1339; *Aurel v. Hallworth*, ELH-20-1340; *Aurel v. Hogan*, No. 20-2348; *Aurel v. Holley*, No. ELH-20-2349; *Aurel v. Bittinger*, No. ELH-20-2377.

continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Id.* (quoting *Martin*, 319 F.3d at 1050). Further, "an inmate must make 'specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury.'" *Chase v. O'Malley*, 466 F. App'x 185, 186–87 (4th Cir. 2012) (per curiam) (quoting *Martin*, 319 F.3d at 1050).

Aurel states in his motion for emergency relief that he is in "imminent danger of serious physical injury" and fears for his life "based solely on verbal threats of harm made by the officer's [sic] at WCI." ECF 3, at 1 in DLB-21-2182. This generalized statement lacks specific facts indicating that he is in danger of serious harm or that there is a pattern of misconduct by officers that creates a likelihood of imminent physical injury.

Aurel's allegations that officers threatened to put him in a cell, spray him with chemical mace, and have a spit-blocking mask put on his face so he will "choke to death" are not new to this Court. ECF 1, at 5 in DLB-21-2182. Aurel made identical allegations against officers at North Branch Correctional Facility in a previously filed case and similarly requested that the Court issue an order requiring the officers to remain 500 yards away from him or that he be transferred to another facility. *Aurel v. Bittinger*, No. ELH-20-2377, 2020 WL 7351604 (D. Md. Dec. 14, 2020). The Court denied Aurel's request to proceed in forma pauperis in that case because he was subject to the three-strike rule then, as he is here, and he did not adequately allege imminent physical injury. *Id.* at *2.

In addition, Aurel's allegations that he has been "poison[ed] by all Corizon staff, by dietary and officers" does not present a viable allegation that he is in imminent danger of serious harm. ECF 3, at 3 in DLB-21-1422. Other than this bare assertion, he does not allege any specific facts

indicating how he was poisoned by so many individuals. Nor does he allege he suffered any physical harm because of the alleged poisoning.

Aurel has alleged a number of generalized complaints that have occurred over a significant period of time. However, he has not alleged that, at the time he filed either of his complaints, he faced imminent danger of serious physical injury. Absent such a showing, there is no basis for granting Aurel's motion to proceed in forma pauperis. Aurel is once again forewarned that should he attempt to file future civil rights actions in this Court, they must be accompanied by the civil filing fee. In the alternative, a complaint filed with an in forma pauperis motion must demonstrate that Aurel is in imminent danger of serious physical harm.

IV.     Motion for Emergency Restraining Order

Injunctive relief "is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). A plaintiff seeking such relief must meet "a high bar" by "[s]atisfying . . . four factors." *SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017). The plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) (discussing *Winter* factors). The "'irreparable harm' must be 'neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

Even if plaintiff had prepaid the filing fees so that the Court could consider his claims, he could not prevail on his motion for an emergency restraining order. He has failed to establish that

he is in any imminent danger. Consequently, he has not shown that he is likely to suffer irreparable harm if the Court does not grant him preliminary injunctive relief.

V.      Conclusion

For the reasons stated above, cases DLB-21-1422 and DLB-21-2182 are consolidated. Aurel's request for emergency injunctive relief, ECF 3 in DLB-21-2182, is denied without prejudice. Aurel's motions for leave to proceed in forma pauperis, ECF 2 in DLB-21-1422 and ECF 2 in DLB-21-1422, are denied.

A separate order follows.

December 14, 2021
Date

Deborah L. Boardman
United States District Judge